**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Francis Story GOELTZ et al., Defendants-Appellants.**

**Nos. 74–1379, 74–1380 and 74–1381.**

United States Court of Appeals, Tenth Circuit.

Argued Feb. 28, 1975.

Decided March 21, 1975.

Rodney G. Snow, Asst. U. S. Atty. (William J. Lockhart, U. S. Atty., on the brief), for plaintiff-appellee.

Walker E. Anderson, Salt Lake City, Utah, for defendant-appellant Goeltz.

William K. Reagan, Salt Lake City, Utah, for defendants-appellants Bray and Wray.

Before BREITENSTEIN, McWIL-LIAMS and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Defendants-appellants Goeltz, Bray, and Wray were charged in a one-count information with possession of official insignia in violation of 18 U.S.C. § 701. Each was found guilty after trial to the court and appeals. We affirm.

■ Defendants demanded, and were refused, a jury trial. Section 701 authorizes a maximum penalty of six months imprisonment, a $250 fine, or both. The sentences for Goeltz and Bray were for six months imprisonment and a $250 fine. Wray received three years probation and a $250 fine. Section 1(3), 18 U.S.C., defines a petty offense as a misdemeanor the penalty for which does not exceed six months imprisonment or a $500 fine or both. The provisions of the Constitution, Art. III, § 2, cl. 3, and the Sixth Amendment, relating to jury trials in criminal cases do not apply to petty offenses. Frank v. United States, 395 U.S. 147, 148, 89 S.Ct. 1503, 23 L.Ed.2d 162. See also Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 and cases there cited. Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d

260 has no pertinence. The concern there was with the Seventh Amendment provision for jury trial in suits at common law where the value in controversy exceeds $20. Denial of jury trial in the instant case was proper.

Section 701 proscribes the possession of any "badge, identification card, or other insignia, of the design prescribed by the head of any department or agency of the United States for use by any officer or employee thereof, or any colorable imitation thereof, * * * except as authorized under regulations made pursuant to law * * * ."

The charge relates to an Internal Revenue Service seizure notice. It bears the seal of IRS in the upper left-hand corner and reads:

## "WARNING

### UNITED STATES GOVERNMENT SEIZURE

This property has been seized for nonpayment of internal revenue taxes, by virtue of levy issued by the District Director of Internal Revenue. All persons are warned not to remove or tamper with this property, in any manner, under severe penalty of the law." ·

The design was prescribed by IRS and the form was for use of revenue officers of grade nine or higher for the collection of federal taxes by the seizure of property.

An undercover IRS agent infiltrated a Salt Lake City group participating in a tax protest movement. At an April 5, 1973, meeting conducted by Goeltz, Bray said that seizure cards would be placed on automobiles; that this would cause irate citizens to call IRS; and that good publicity would result. Later Bray told the agent that about 2,000 notices had been printed and that "we are going to do some midnight riding." At an April 19 meeting, attended by the three defendants and others, in Bray's office, Goeltz displayed the seizure notices and said that he had received them "out of the blue." The notices bore the facsimile signature of "Lloyd Fries-Revenue Of-

ficer." Goeltz told the group that the notices should be discreetly placed where IRS agents would normally place them; that if anyone was caught he should state that he was replacing what apparently had fallen off; and that a person should not have more than one notice in his possession at one time. Bray said that gloves should be worn to avoid leaving fingerprints. Goeltz added that a stack of notices would be left on the table and that each should take some as leaving the meeting. Shortly after the meeting broke up, agents arrested the three defendants, each of whom had a large number of the notices in his possession. None of the defendants were IRS officers.

■ Defendants say that § 701 is vague and overly broad and hence violates due process requirements. The attack is against the word "insignia" and the phrase "colorable imitation." Their clandestine activities show, and the court found, defendants' knowledge of unauthorized possession and intent to violate § 701. Defendants' acts were not unwitted, unintended or inadvertent. See Morissette v. United States, 342 U.S. 246, 270, 72 S.Ct. 240, 96 L.Ed. 288. They were done knowingly with intention to harass innocent citizens and embarrass IRS. In assessing vagueness, a statute must be considered in the light of the conduct with which a defendant is charged. See United States v. National Dairy Products Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561.

■ The attacked provisions are not indefinite, vague or uncertain. Webster's New International Dictionary, 2d ed., defines insignia as meaning "distinguishing marks of authority, office, or honor." Black's Law Dictionary defines "colorable imitation" to mean "such a close or ingenious imitation as to be calculated to deceive ordinary persons." When measured by common understanding and practice, the challenged language conveys a sufficiently definite warning as to the proscribed conduct. United States v. Petrillo, 332 U.S. 1, 8,

67 S.Ct. 1538, 91 L.Ed. 1877. We find no unconstitutional infirmity in § 701.

■ Next, defendants argue that the statute does not apply to them. Using the principle of ejusdem generis, they say that the reference to "badge, identification card, or other insignia" limits insignia to badges and identification cards. Ejusdem generis is a canon of construction and may not be used to defeat the intent of Congress. United States v. Alpers, 338 U.S. 680, 682, 70 S.Ct. 352, 94 L.Ed. 457 and Gooch v. United States, 297 U.S. 124, 128, 56 S.Ct. 395, 80 L.Ed. 522. The enactment of § 701 was intended to protect the public against the use of a recognizable assertion of authority with intent to deceive. Defendants' conduct was well within the statute's proscription.

■ Defendants say that their acts were for the promotion of their political and philosophical views on taxation and, hence, were within the free speech protection of the First Amendment. It is difficult to relate the defendants' possession of simulated seizure warnings to the communication of ideas. Defendants' conduct was of the dirty-trick variety and was for the purpose of enraging its victims and annoying IRS.

■ If this non-speech activity had any idea-communication overtones, the First Amendment is no protection. The constitutional power to lay and collect taxes is broad and sweeping. Const. Art. I, § 8, cl. 1, and Sixteenth Amendment. Collection of taxes by distraint and seizure is authorized. 26 U.S.C. § 6331. The warning which defendants simulated was a proper notice of seizure. The protection which § 701 affords constitutionally furthered an important and substantial governmental interest unrelated to the suppression of free expression. The incidental, if any, restriction on First Amendment rights "is no greater than is essential to the furtherance of" the governmental interest. United States v. O'Brien, 391 U.S. 367, 376–377, 88 S.Ct. 1673, 20 L.Ed.2d 672. Defend-

ants' First Amendment claim has no merit.

■ Defendants assert that they were unlawfully arrested because the charge was a misdemeanor not committed in the presence of the officers. One officer saw each defendant take possession of some of the simulated warnings and communicated his observations to his associates. Consideration must be given to the collective knowledge of all the officers involved. United States v. Sheppard, 10 Cir., 455 F.2d 1081, 1083. Also the information of the officers sufficed to furnish probable cause for belief that at least three felonies, e. g. 18 U.S.C. § 506 (possession of a counterfeit seal), 26 U.S.C. §§ 7206 (false statements) and 7212 (corrupt interference with administration of IRS laws), had been committed. The subsequent charge of a misdemeanor does not affect the legality of the arrests. The arrests, and the searches incidental thereto, were legal.

Defendants complain that they were not given a speedy trial. The arrests were on April 19, 1973; the information was filed on April 20, and the trial was on March 13, 1974. Between May 29, 1973, and March 11, 1974, defendants filed about 24 motions. At all times after April 20 defendants were released on personal recognizance.

■ In Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 the Court said that a balancing test requires court approach to speedy trial problems on an ad hoc basis. Four factors which should be assessed are length of delay, reason for the delay, defendant's assertion of his rights, and prejudice to defendant. In the instant case the delay was about 11 months and was due in large part to defense tactics. The government never requested any delay. Defendants did not assert a right to speedy trial. The record does not show any prejudice to any defendant because of the delay. No Fifth or Sixth Amendment rights of any defendant were denied by the delay. See United States v.

Merrick, 10 Cir., 464 F.2d 1087, 1090–1091, cert. denied 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314.

■ The claim of insufficient evidence to sustain the convictions borders on the frivolous. The evidence, which we have outlined in part, shows that each defendant knowingly and intentionally possessed reproductions of the official IRS warning of seizure under levy bearing the IRS seal and purporting to be signed by an IRS officer.

■ Arraignment was on July 26, 1973. The case was later set for trial on January 9, 1974, and eventually tried on March 13. On January 24, 1974, Bray filed a motion charging Judge Ritter with bias and prejudice and asking that the trial be before another judge. Bray's appointed counsel sought to withdraw the motion but Bray would not permit him to do so. The motion falls far short of meeting the requirements of 28 U.S.C. § 144. It was untimely. It states conclusions rather than facts and shows at the most that Bray did not like Judge Ritter, not that Judge Ritter was prejudiced against Bray. A decision against Bray in another case does not show prejudice. The motion was properly denied. Knoll v. Socony Mobil Oil Company, 10 Cir., 369 F.2d 425, 429–430, cert. denied 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138.

■ Defendants say that they did not have a fair trial because of the conduct of the judge. To support their claim they take numerous incidents out of context. On consideration of the entire record we are convinced that the judge exercised commendable restraint in the face of impertinent and contemptuous behavior. The trial was to the court. The judge did no more than that necessary to keep the proceedings within reasonable bounds. Cooper v. United States, 10 Cir., 403 F.2d 71, 73. A party may not taunt a judge into a reprimand and then on appeal claim the reprimand was justification for a new trial. These defendants had a fair trial and were properly convicted.

Affirmed.