**PREFERRED DISPLAY, INC., Plaintiff,**

v.

**CVS PHARMACY, INC., Defendant/Third–Party Plaintiff,**

v.

**Zaimu Holdings LLC d/b/a Vincent Longo Cosmetics, Third–Party Defendant.**

No. 12 Civ. 560(KBF).

United States District Court, S.D. New York.

Feb. 11, 2013.

Todd Allen Strassberg, Robert Lawrence Strassberg, Strassberg & Strassberg, P.C., New York, NY, for Plaintiff.

Matthew Thomas McLaughlin, Joshua Stephen Barlow, Nixon Peabody LLP, Boston, MA, for Defendant.

Steven David Isser, Law Offices of Steven D. Isser, New York, NY, for Third–Party Defendant.

*MEMORANDUM DECISION & ORDER*

KATHERINE B. FORREST, District Judge.

A national drug store chain mistakenly ordered a large amount of merchandise

from a cosmetics company. When the cosmetics company later defaulted on its bank loan, its lender foreclosed and purchased all of its assets at a peaceful and appropriate sale under the Uniform Commercial Code ("UCC"). The lender then sold those assets to a different cosmetics company; and the drug store chain in possession of the merchandise sent it to that second company and obtained a credit.

Complicating this tale is that the first cosmetics company had also ordered a large amount of display cases from a manufacturer without paying for them. The display case manufacturer sued and obtained a judgment. The manufacturer then sought to satisfy that judgment by restraining, and later executing on, the cosmetics company's account with the drug store chain. The drug store chain attempted to comply by delivering the balance of that account. The catch was that the account did not include the mistakenly ordered merchandise the drug store chain had, by this time, already sent to the new cosmetics company (to whom the foreclosing bank lender had sold the defaulting company's assets).

Taking that return as a violation of its restraining order, the display case manufacturer—plaintiff Preferred Display, Inc. ("Preferred")—here sues the drug store chain—defendant CVS Pharmacy, Inc. ("CVS"). Preferred seeks to compel CVS to pay it an amount equal to the value it returned to the new cosmetics company— here, third-party defendant Zaimu Holdings LLC ("Zaimu")—and to hold CVS in contempt for violating the restraining order. The parties now cross move for summary judgment. As more fully explained below, the merchandise mistakenly ordered by CVS became property of CVS upon delivery, and CVS could do with it what it desired without violating the restraining order. Nor did CVS violate the restraining order by wrongfully extinguishing any debt it owed the original cosmetics company, Vincent Longo, Inc. ("Longo"). Accordingly, Preferred's motion for summary judgment is denied in its entirety and CVS's motion for summary judgment is granted in its entirety.

## FACTUAL BACKGROUND

The facts and briefing in this case are labyrinthine. But the Court is like Theseus. Having successfully navigated the arguments and the record, the Court found not the minotaur, but instead returned with those facts material to these cross motions. They are undisputed unless otherwise noted.

### The Parties and their Relationships

Longo manufactures cosmetics. (Def.'s 56.1 Statement ¶ 2.) Longo's business was supported, *inter alia*, with a bank loan issued by Citibank, N.A. ("Citi"), collateralized by "[a]ll personal property of every kind and nature whether now owned or hereafter acquired, wherever located, including, without limitation, all accounts (including ... receivables), goods ... and other contract rights or rights to the payment of money...." (Collins Decl. Ex. E at Bates CVS0000484.)

In late May 2010 Longo defaulted on the loan. (*See id.* at Bates CVS0000487–88.) Citi assigned its rights under the loan, including the right to foreclose on Citi's collateral, to PMW Acquisition Company, LLC ("PMW"). (*Id.* at Bates CVS0000486, 88–89.) PMW thereafter, and with Longo's express agreement, instituted a public secured party sale of the collateral under the UCC, and purchased all of Longo's assets at that sale. (Id, at Bates CVS0000482, 87.) PMW then sold the assets to Zaimu, which continued to sell cosmetics products. (*Id.* at Bates CVS000482.)

CVS operates thousands of drugs stores and pharmacies throughout the United States (Def.'s 56.1 Statement ¶ 1), and as such was a natural business partner for Longo and later for Zaimu. In 2009, CVS and Longo executed an agreement (re-executed as amended in 2010, the "Supply Agreement") under which CVS agreed to purchase, and Longo agreed to supply, specialty beauty products. (*Id.* ¶¶ 1, 2.) The Supply Agreement contained no specific term concerning passage of title of goods provided.[1] After Longo's default and PMW's foreclosure, Longo separately assigned its "rights, title, and interest in" the Supply Agreement to Zaimu. (Collins Decl. Ex. G1 at unnumbered page 10.)

Longo also apparently had agreements with Preferred relating to the manufacture and supply of cosmetics display cases. On August 19, 2009, Preferred sued Longo in this Court for breach of contract relating to approximately $450,000 in unpaid invoices Longo owed Preferred for shipments of display cases; and on February 5, 2010, Judge Deborah Batts granted default judgment in favor of Preferred for approximately $470,000. (*See generally* docket nos. 1, 11, *Preferred Display, Inc. v. Vincent Longo, Inc.,* 09 Civ. 7316 (S.D.N.Y.).)

### The Present Dispute

On April 12, 2010, in an attempt to satisfy its judgment, Preferred served CVS with a subpoena broadly seeking information about Longo's business and accounts with CVS, and with an accompanying restraining order. (*See* Collins Decl. Ex. C.) The restraining order stated, in relevant part, that:

> [P]ursuant to [N.Y. C.P.L.R. § 5222(b)], you are hereby forbidden to make or suffer any sale, assignment or transfer of ... any [property in which Longo "has an interest"] or pay over or otherwise dispose of any [debts CVS owed Longo] except as therein provided.
>
> ... [T]his notice also covers all property in which [Longo] has an interest hereafter coming into your possession or custody, and all debts hereafter coming due from you to [Longo].

(*Id.* at Bates CVS0000233.)

On April 19, 2010, CVS mistakenly placed an order for approximately $385,000 of merchandise from Longo (the "Mistaken Merchandise"). CVS took delivery of the Mistaken Merchandise on April 28, but did not discover its error until sometime in June. (Collins Decl. ¶ 13.)

In late May 2010, CVS received an invoice from a company called "Vincent Longo Cosmetics," and accordingly began suspecting that the Longo entity it was dealing with might not be the same entity with which it had executed the Supply Agreement. (*Id.* ¶ 15 and Ex. D.)[2] This

---

1. It stated, however:
PRICING/DELIVERY
2. (a) Delivery of merchandise shall be shipped directly to the [ ] store locations designated by CVS, Acceptance of the merchandise by CVS shall not constitute a waiver on the part of CVS of its rights hereunder. CVS shall be responsible for all shipping and freight costs. The terms of payment for products sold to CVS ... shall be 2% Net 30 days. [Longo] will cover all damages and returns.... [Longo] will require the returned product ... to be in its complete saleable packaging to accept the return from CVS.
...

(c) Any merchandise rejected by CVS shall be ... at CVS' [sic] option, returned to [Longo] without notice to [Longo] and at [Longo's] expense and such return will be adequate notice of rejection of the merchandise.
(Collins Decl. Ex. A ¶ 2.) The Supply Agreement was governed by New York law. (*Id.* ¶ 17.)

2. As stated above, all the assets of Longo (Vincent Longo, Inc.) had been sold at auction in May, and eventually bought by Zaimu. Zaimu's "doing business as" name was and is Vincent Longo Cosmetics.

was confirmed in early June when Zaimu's counsel emailed CVS's counsel, attaching several relevant UCC documents. (*Id.* ¶¶ 16–18 and Ex. E.) CVS then, after discovering its error in purchasing the Mistaken Merchandise, agreed to turn over approximately $350,000 of that merchandise to Zaimu in return for a credit from Zaimu for the same value of goods CVS might order from Zaimu in the future. (*See id.* ¶¶ 18–22.)

Preferred finally executed on its restraining order close to a year later. On March 4, 2011 the United States Marshal served a writ of execution on CVS, levying on all "right, title and interest" Longo had in "any funds, property or assets" held by CVS. (*See id.* ¶ 28 and Ex. H.) CVS promptly complied, delivering a check to the Marshal for approximately $80,000 on May 2, representing all amounts in all accounts Longo held with CVS. (*See id.* Ex. J.)

$80,000, however, is almost $390,000 short of the $470,000 owed by Longo to Preferred pursuant to the Court's default judgment. Unhappy with that fact, Preferred sued CVS seeking the balance. Specifically, Preferred alleged that CVS "violated the Restraining Notice by returning or releasing merchandise in which [Longo] had an interest for credits." (Compl. ¶ 22.) [3] Importantly, Preferred does not allege anywhere in its complaint that CVS violated the restraining order by satisfying any debt CVS owed Longo, or even that any such debt existed. Preferred and CVS have now cross-moved on Preferred's claims.

---

**3.** *See also* Compl. at 1 ("Defendant is a garnishee that returned and/or released assets of [Longo], to wit, merchandise, in violation of a restraining notice...."); ¶ 21 ("CVS returned and/or released merchandise delivered by [Longo] during the time the Restraining Notice was in effect ...."); at 6 ("CVS negligently or willfully returned and/or released merchandise....").

## DISCUSSION

### Legal Standard

Summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano,* 604 F.3d 732, 740 (2d Cir.2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue of material fact for trial. *Price v. Cushman & Wakefield, Inc.,* 808 F.Supp.2d 670, 685 (S.D.N.Y.2011); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir.2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir.2010) (citations omitted); *see also Price,* 808 F.Supp.2d at 685 ("In seeking to show that there is a genuine issue of material fact for trial, the non-moving party cannot rely on mere allegations, denials,

conjectures or conclusory statements, but must present affirmative and specific evidence showing that there is a genuine issue for trial.").

In addition, self-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment. *See BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.-Conn.,* 77 F.3d 603, 615 (2d Cir.1996). Only disputes relating to material facts—*i.e.,* "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

### Violation of the Restraining Order

■ Federal Rule of Civil Procedure 69 provides that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution ... must accord with the procedure of the state where the court is located ...." Fed.R.Civ.P. 69(a)(1). New York law thus governs the proper procedure for Preferred's execution on its default judgment. New York's Civil Practice Law and Rules § 5222 provides, in relevant part, that:

> A restraining notice served upon a person other than the judgment debtor ... is effective only if, at the time of service, he or she owes a debt to the judgment debtor ... or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor ... has an interest.... All property in which the judgment debtor ... is known or believed to have an interest then in and thereafter

coming into the possession or custody of such a person ... and all debts of such a person ... then due and thereafter coming due to the judgment debtor ... shall be subject to the notice.... Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit....

N.Y. C.P.L.R. § 5222(b). The legal "interest" owned by the judgment debtor in the property held by the third party "must be ... a direct interest in the property itself which ... is leviable and not an indirect interest." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 295 F.Supp.2d 366, 391 (S.D.N.Y. 2003) (internal quotation marks omitted).

■ The central issue on this motion is whether the Mistaken Merchandise was property Longo had an interest in such that CVS's transfer of that merchandise to Zaimu violated N.Y. C.P.L.R. § 5222(a). The Court concludes that it was not, and that therefore no violation of the statute occurred.

■ "Under Section 2–401 [of New York's Uniform Commercial Code], title to property generally passes to the buyer of property at the time of the physical delivery of the goods." *Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art,* 324 Fed.Appx. 117, 119–20 (2d Cir.2009) (citing N.Y. U.C.C. § 2–401(2)). Unless the parties otherwise agree in the relevant contract, title will pass when the seller completes its obligation by tendering merchandise to the buyer, even if a document of title is to be executed in the future. *S.E.C. v. Universal Express, Inc.,* 04 Civ. 2322, 2008 WL 1944803, at *7 (S.D.N.Y. Apr. 30, 2008).

Here, the Supply Agreement contained no separate term concerning passage of title. Thus CVS gained title and full ownership rights to the Mistaken Merchandise

when that merchandise was delivered; and that merchandise was no longer property owned by Longo subject to the restraining order. Nor does the record indicate that Longo retained any other direct interest—other than simply an ownership interest—in the merchandise once it was delivered. Under such circumstances, CVS owned all rights to the Mistaken Merchandise, and CVS's transfer of the property could not have violated the restraining order. *See JSC Foreign,* 295 F.Supp.2d 366, 391; *AG Worldwide v. Red Cube Mgmt. AG,* 01 Civ. 1228, 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002) ("If the third parties do not have property or debts in which the judgment debtor has an interest, the restraining notices are not effective."); *Burstin Investors, Inc. v. K.N. Investors, Ltd.,* 255 A.D.2d 478, 479–80, 680 N.Y.S.2d 639 (2d Dep't 1998) ("There is no evidence in the record ... [that] the intervenor was in possession of any property in which Kalka or K.N. had an interest."); 33 Corpus Juris Secundum, Executions § 575 ("The restraint is not operative as to property of the third person, but is and can be made operative only as to property of the judgment debtor.").

Indeed, Preferred *agrees* with this conclusion. In its reply/opposition papers, Preferred argues:

> [T]he violation of the restraining notice is not in the transferring of the [Longo] goods (although it would have been had the goods been rejected), it is the satisfaction of the [Longo] debt that violates the restraining notice. CVS's compelling Zaimu to accept [Longo] goods for a "credit to satisfy the [Longo] debt" rather than withholding payment for the goods it ordered and accepted (as it did for the other [Longo] debt), violates the restraining notices.

(Pl.'s Reply and Opp'n at 6.)

As an initial matter, Preferred's argument is procedurally improper and the quotation in its argument misleading. Preferred did not allege in the complaint that CVS ever had any debt to Longo, that such debt was extinguished or satisfied by CVS's transfer of the Mistaken Merchandise to Zaimu, that CVS compelled Zaimu to take the Mistaken Merchandise in order to satisfy the debt, or that CVS had any other debt to Longo. Nor even is the purported quotation—that CVS forced Zaimu to take back the Mistaken Merchandise for a *"credit to satisfy the [Longo] debt"* (*id.* (emphasis added))—included in any submission made by CVS, and Preferred does not include any citation for it. Indeed, in no submission by CVS does CVS ever assert that the return of the Mistaken Merchandise satisfied any debt to Longo. Instead, CVS asserts—and the undisputed facts confirm—that CVS's return of the Mistaken Merchandise indebted *Zaimu* to *CVS.* (Def.'s 56.1 Statement ¶¶ 17, 20; Pl.'s Response to Def.'s 56.1 Statement ¶¶ 17. 20.)

In fact—and despite the absence of any fact indicating that the merchandise's return eliminated any debt CVS owed Longo—the law suggests that no debt from CVS to Longo could possibly have existed at the time CVS sent the Mistaken Merchandise to Zaimu. After Longo's default, PMW—peacefully, with Longo's consent, and in accordance with the UCC—took possession of the collateral securing Longo's bank loan. (*See* Collins Decl. Ex. E at Bates CVS0000487–89); *see also* N.Y. U.C.C. § 9–609(b)(2). That collateral included all accounts receivable owed to Longo, and any "other contract rights or rights to the payment of money." (Collins Decl. Ex. E at Bates CVS0000484: *see also id.* at Bates CVS0000489.) PMW then—again with Longo's consent and in accordance with the UCC—sold that collateral to itself at a public sale. (*See* Collins Decl. Ex. E at Bates CVS0000482, 87–89); *see also* N.Y. U.C.C. § 9–610(a), (c)(1). Those events, as a matter of law,

discharged Longo's bank debt and PMW's security interest, transferred all rights in the collateral to PMW, and terminated any subordinate interests in the collateral. *See* N.Y. U.C.C. § 9–617(a)(*l* )–(3).

It was after that public secured party sale that CVS sent the Mistaken Merchandise to Zaimu (who had at that point purchased Longo's cosmetics manufacturing assets from PMW). That transfer, however, did not extinguish any debt CVS owed Zaimu or anyone else—indeed, through it Zaimu became indebted to CVS. (Collins Decl. ¶¶ 19, 22.)

And even if it did, the debt thus extinguished would be one CVS owed *Zaimu*, not one CVS owed *Longo*. Preferred makes no allegation and asserts no argument that Zaimu is, or is the alter-ego of, Longo, and such an assertion would not be supported by the record. Thus, it is inescapable that any debt so extinguished— again, a fact not pleaded nor in the record—would not be "then due and thereafter coming due *to the judgment debtor*." as required by Section 5222(b). N.Y. C.P.L.R. § 5222(b) (emphasis added). Accordingly, such a debt would not have been restrained pursuant to the restraining order, and CVS would have been entitled to discharge it.[4]

## CONCLUSION

Preferred cannot establish that CVS violated the restraining order either by transferring the Mistaken Merchandise to Zaimu or by extinguishing any debt to Longo. Accordingly, Preferred's motion for summary judgment is DENIED in its entirety, and CVS's motion for summary judgment is GRANTED in its entirety.

CVS has also filed a third-party complaint against Zaimu for contribution, indemnity, and unjust enrichment. (*See* docket no. 23.) CVS is hereby ORDERED to inform the Court by February 15, 2013, whether it intends to pursue these claims in light of this Memorandum Decision & Order.

The Clerk of the Court is directed to close the motions at docket nos. 17 and 29.

SO ORDERED.

---

**4.** This analysis leads as well to two secondary conclusions. The first is that CVS's alternative argument that it was entitled to send the Mistaken Merchandise to Zaimu without violating the restraining order because of PMW's senior security interest fails. Pursuant to PMW's secured party sale, the security interest PMW had in the Mistaken Merchandise— if indeed that merchandise were goods owned by Longo—was discharged. Thus, CVS would not have been prevented from delivering the Mistaken Merchandise to Preferred due to any claim with senior priority. The second is that any anticipated motion from Preferred to amend its complaint to add the theory that the discharge of the debt violated the restraining order would be futile, and would therefore be denied. *See Fattoruso v. Hilton Grand Vacations Co., LLC.*, 873 F.Supp.2d 569, 582 (S.D.N.Y.2012).