**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 15-1617**

---

MR. ADRIAN R. SCOTT,

　　　　　　Plaintiff - Appellant,

　　　v.

MARYLAND STATE DEPARTMENT OF LABOR, LICENSING & REGULATION;
JENNIFER DASHIELL REED, Director of the Office of Fair
Practices; ALICE L. WIRTH, Deputy Assistant Secretary Office
of Educational & Workforce Skills Training for Correctional
Institutions; JAMES YOUNGER, III, Principal Maryland
Correctional Institute; EDWARD W. SCHWABELAND, Principal
Maryland Correctional Institute; RANDOLPH J. SHIPE,
Principal Maryland Correctional Institute; LEANN LORENZ,

　　　　　　Defendants - Appellees.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.　J. Frederick Motz, Senior District
Judge.　(1:14-cv-02432-JFM)

---

Argued: September 20, 2016　　　　Decided: December 20, 2016

---

Before NIEMEYER and DIAZ, Circuit Judges, and Irene M. KEELEY,
United States District Judge for the Northern District of West
Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: JoAnna M. Esty, MAJESTY LAW GROUP, Middle River,
Maryland, for Appellant.　M. Willis Gunther, OFFICE OF THE
ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for

Appellees.    **ON BRIEF:** Brian E. Frosh, Attorney General of Maryland, Christopher Bowie Lord, Assistant Attorney General, Department of Labor, Licensing, and Regulation, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Adrian R. Scott appeals the district court's dismissal of his employment discrimination suit against the Maryland State Department of Labor, Licensing & Regulation ("DLLR") and six DLLR employees for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621 et seq. Finding that the district court did not abuse its discretion by dismissing the claims against DLLR under Fed. R. Civ. P. 12(b)(5), and that the six DLLR employees are not subject to suit in their individual capacities, we affirm the judgment.

I.

This case is before us on a motion to dismiss, so we accept the factual allegations of Scott's complaint as true. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013). Anne Arundel Community College ("AACC") contracted with DLLR on a yearly basis to provide academic, occupational, and library instruction at various Maryland correctional institutions. AACC bore the primary responsibility for recruiting and hiring instructors, but DLLR also interviewed and approved candidates. Beginning in March 2009, AACC employed Scott as an instructor for the Employment Readiness Workshop at Maryland Correctional

3

Institution – Jessup ("MCI-J"). His contract was renewed every year until 2012.

Although Scott's experience as a contract employee was initially satisfactory, it took a decidedly unpleasant turn in the spring of 2012. During that time, Scott allegedly suffered sexual and workplace harassment, as a consequence of which he filed at least three administrative complaints with DLLR. This action resulted in further harassment and retaliatory behavior from his immediate supervisor, the MCI-J school principal, and eventually the replacement principal. Finally, in July 2012, at DLLR's direction, AACC refused to renew Scott's contract. After that, DLLR advised Scott that, in order to return to work, he would be required to drop all his complaints and agree not to file any others. On October 12, 2012, Scott signed an agreement that allowed him to return to work at a different DLLR facility, Metropolitan Training Center ("MTC"), located in Baltimore. The harassment and retaliation resumed while Scott was at MTC, however, and, on October 22, 2012, DLLR again terminated his employment.

In September 2012, while between jobs at MCI-J and MTC, Scott filed a charge with the Equal Opportunity Employment Commission ("EEOC") alleging that DLLR and its agents had subjected him to discrimination, harassment, and retaliation in violation of Title VII and the ADEA. The EEOC dismissed the

4

matter because it was "unable to conclude that the information obtained establishe[d] violations of the statutes." J.A. 54. It then issued a Notice of Suit Rights on April 30, 2014, informing Scott that his EEOC charge had been dismissed and that he had a right to file suit within 90 days of receiving the notice. On July 30, 2014, Scott filed a pro se complaint charging employment discrimination and naming as defendants DLLR and six DLLR employees.

In his complaint, Scott alleged violations of Title VII and the ADEA. More particularly, he alleged that the defendants wrongfully failed to hire him, terminated his employment, and failed to promote him, all on the basis of his race, color, sex, and age. At the time he filed his complaint, Scott chose not to have any summonses issued. Instead, he sent a copy of the complaint to each defendant by certified mail to a satellite DLLR office located in Baltimore. The administrative office of DLLR is located elsewhere, however; neither the DLLR secretary nor any registered agent is located at the address used by Scott. Apparently, a mail room employee at the DLLR satellite office signed for the complaints on August 4, 2014, while at the Post Office picking up the building's mail.

On October 30, 2014, the district court granted Scott's request for leave to proceed in forma pauperis and provided him with specific instructions about how to properly effect service

5

on the defendants through the United States Marshals Service ("USMS"). In its Order, the district court directed the Clerk to mail Scott a USMS service form for each defendant, and also directed Scott to complete the form and return it, together with a copy of the complaint for each named defendant, within 21 days.

At the end of its Order, the district court directed the Clerk to deliver only one copy of the USMS form. According to Scott, the Clerk only sent him one form, which he addressed to DLLR and returned to the Clerk's office on November 20, 2014, the last day to do so. Scott asked the Clerk's office what he should do in order to serve the other defendants, and was advised that the Clerk would mail the appropriate forms to him. The Clerk then issued the summons to DLLR on November 21, 2014.

The USMS mailed the summons and complaint for DLLR to the address provided by Scott, by certified mail, return receipt, and restricted delivery. Despite the district court's careful instructions to him about how to obtain an address sufficient for serving DLLR's resident agent, Scott directed service to "Maryland State Department of Labor Licensing Regulation" and listed the same DLLR satellite office address to which he had initially mailed the complaints.

On December 1, 2014, a mail room employee at the satellite office accepted service of the summons directed to DLLR.

6

According to this employee's affidavit, he later gave the envelope to the Unemployment Insurance Board of Appeals, from where it eventually wound its way to the Office of Fair Practices on or about December 3, 2014. Counsel then noted an appearance on behalf of all the defendants on December 11, 2014. In mid-December, Scott again went in person to the Clerk's office to pick up the additional USMS forms he had not received by mail.

On January 22, 2015, the defendants moved to dismiss the complaint. On February 2, 2015, the Clerk received additional USMS forms and service copies of the complaint from Scott. Although the USMS form for DLLR listed its secretary, Scott inexplicably directed that service be made at the Baltimore satellite office. The individual defendants' forms directed that service be made at various addresses, including several correctional facilities, and also at the Baltimore DLLR satellite office. Ultimately, the summonses were sent by certified mail, return receipt and restricted delivery, and were executed either on March 9 or 10, 2015.

On March 10, 2015, Scott's attorney noted her appearance, and, on March 12, 2015, the parties consented to a second 30-day extension of time for Scott to respond to the motion to dismiss, which he finally did on April 10, 2015. That response addressed the substantive issues raised in the motion to dismiss, and also

7

included brief requests for an extension of time in which to cure service, if necessary, and also for leave to file an amended complaint should the Court find the first complaint defective. Aside from those embedded requests, Scott never moved for an extension of the time in which to serve the defendants, see Fed. R. Civ. P. 6(b), nor did he separately move for leave to file an amended complaint pursuant to Rule 15(a)(2) and the Local Rules of the District of Maryland.

The district court dismissed the complaint on May 7, 2015,[1] finding that Scott had not properly effected service on DLLR, had not served the individual defendants within the 120-day service period, and had failed to show good cause to extend the service period. It also determined as a matter of law that the defendants were immune from suit in federal court. It concluded that the six individual DLLR employees are not proper defendants under Title VII or the ADEA, that DLLR was not Scott's employer under Title VII, and that DLLR was not subject to suit under the ADEA.

---

[1] Because the district court did not state whether the dismissal was with prejudice, pursuant to Fed. R. Civ. P. 41(b), "a[n] [involuntary] dismissal . . . operates as an adjudication on the merits."

8

We review a district court's decision for abuse of discretion where, as here, it dismisses a claim for improper service of process under Rule 12(b)(5). Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 708 (4th Cir. 1993). A district court abuses its discretion by failing to exercise any discretion, failing to apply the proper standard, or by using "erroneous factual or legal premises." James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993). We review de novo a dismissal under Rule 12(b)(6). Wag More Dogs, Ltd. Liab. Corp. v. Cozart, 680 F.3d 359, 364 (4th Cir. 2012). The plaintiff bears the burden of proving adequate service once a motion to dismiss for insufficient service of process has been filed pursuant to Fed. R. Civ. P. 12(b)(5). See Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010).

III.

At the time of the events in this case, a plaintiff was required to serve a summons and complaint on each defendant within 120 days of filing suit. Fed. R. Civ. P. 4(c), (m) (2014) (amended 2015). However, as we held in Robinson v. Clipse, the service period of Fed. R. Civ. P. 4(m) is tolled while the district court considers an in forma pauperis complaint. 602 F.3d 605, 608 (4th Cir. 2010) ("[A]n in forma pauperis plaintiff

9

should not be penalized for a delay caused by the court's consideration of his complaint."). If a plaintiff fails to effect service within the time required, the district court must dismiss the action "<u>or</u> order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added).

When a plaintiff is proceeding <u>in forma pauperis</u>, the district court must order the USMS to effect service. Fed. R. Civ. P. 4(c)(3). In the District of Maryland, service upon a state-created governmental organization may be effected by serving its chief executive officer, its designated resident agent, or the Maryland Attorney General. Fed. R. Civ. P. 4(j); Md. Rule 2-124(k). "[T]he real purpose of service of process is to give notice to the defendant," <u>Karlsson v. Rabinowitz</u>, 318 F.2d 666, 669 (4th Cir. 1963), and "'mere technicalities' should not stand in the way of consideration of a case on its merits." <u>Torres v. Oakland Scavenger Co.</u>, 487 U.S. 312, 316-17 (1988).

"[A]ctual notice," however, is not the controlling standard. <u>See</u> <u>Mining Energy, Inc. v. Dir., Office of Workers' Comp. Programs</u>, 391 F.3d 571, 576 (4th Cir. 2004). Although actual notice typically warrants liberal construction of the rules, they "are there to be followed, and plain requirements . . . may not be ignored." <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984).

10

A.

We first address the timeliness and sufficiency of service on DLLR. Although Scott filed his complaint and motion to proceed in forma pauperis on July 30, 2014, the district court did not rule on his motion until October 30, 2014. Therefore, the 120-day period within which Scott was required to serve the defendants did not run until February 27, 2015. See Robinson, 602 F.3d at 608.

When the district court granted Scott's motion to proceed in forma pauperis, it ordered him to return the proper forms and service copies of the complaint so that the USMS could effect service on his behalf. Unfortunately, despite the need to serve seven defendants, Scott returned only one USMS form to the Clerk by November 20, 2014. That form directed service on "Maryland State Department of Labor Licensing Regulation," rather than its secretary or resident agent as required by the rules. Fed. R. Civ. P. 4(j); Md. Rule 2-124(k). Scott also failed to follow the district court's instruction to identify the proper address for service. Once again, he listed the same Baltimore satellite office to which he had sent copies of the complaint three months before. Nevertheless, service of this complaint and summons to DLLR was accepted at the address Scott provided on December 1, 2014.

11

After the defendants moved to dismiss his complaint on January 22, 2015, Scott returned additional copies of the complaint and USMS forms to the Clerk on February 2, 2015. Although he listed the secretary of DLLR on the USMS forms, Scott again directed service on DLLR at the Baltimore satellite office. This second attempt at service was delayed, through no fault of Scott, until after the expiration of the 120-day period. The Clerk inexplicably delayed issuing the summonses until February 26, 2015, and, as a consequence, the second summons to DLLR was not executed until March 9, 2015.[2]

We have previously recognized that in forma pauperis plaintiffs "must rely on the district court and the [USMS] to effect service," and should not be penalized for delay in service beyond their control. See Robinson, 602 F.3d at 608-09 (citing Graham v. Satkoski, 51 F.3d 710, 713 (7th Cir. 1995) ("The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically 'good cause' to extend time for service under Rule 4(m)."); see also Wright v. First Student, Inc., 710 F.3d 782, 783-84 (8th Cir. 2013) ("[I]f the delay in service was the

_____

[2] Although the district court's docket reflects that a summons was returned as having been executed on DLLR, the returned executed summons itself is absent from the record. For the purpose of this analysis, we assume that the summons was, in fact, served at the address Scott provided on the USMS form.

12

result of a delay by court staff or the USMS in fulfilling their obligations, [the plaintiff's] complaint should not have been dismissed under Rule 4(m)."). Here, the March 9, 2015, service of process occurred after the 120-day period expired on February 27, 2015. Because that delay was outside of Scott's control, and solely attributable to the Clerk and the USMS, pursuant to Robinson we find good cause for the delay and conclude that Scott's attempt at service was timely.

Nevertheless, both of Scott's timely attempts to serve DLLR were insufficient despite the fact that DLLR received actual notice of the suit. Actual notice does not equate to sufficient service of process, even under the liberal construction of the rules applicable to a pro se plaintiff. See, e.g., Crowley v. Bannister, 734 F.3d 967, 975 (9th Cir. 2013) ("Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4."); Precision Etchings & Findings, Inc. v. LGP Gem, Ltd., 953 F.2d 21, 24 (1st Cir. 1992) ("Although 'minor' formal defects are excusable provided actual notice has been accomplished, . . . the rule nevertheless must be accorded at least substantial compliance.").

The requirements for serving a state-created government agency are clear, and we note that the district court rendered

Scott additional assistance by providing a website and a telephone number where he could obtain the proper name and address for serving DLLR's resident agent. Despite his obligation to do so, Scott failed to direct service to the proper address both in November 2014 and also in February 2015; instead, he directed that service be made at a satellite DLLR office. See Lee v. Armontrout, 991 F.2d 487 (8th Cir. 1993) ("[I]t [is the plaintiff's] responsibility to provide proper addresses for service . . . ."). We find this error to be more than a "mere technicalit[y]," and that actual notice is incapable of curing such a substantial defect in service. See Torres, 487 U.S. at 316-17. To hold otherwise would eviscerate the clear requirements of Rule 4. See Armco, Inc., 733 F.2d at 1089.

B.

Scott argues that he has shown good cause for his failure to properly serve DLLR, and the district court should have granted his request to extend the time to effect proper service. We disagree.

Rule 4(m) requires extension of the 120-day service period only when the plaintiff can show good cause for his failure to serve. Fed. R. Civ. P. 4(m); Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995); see also Nafziger v. McDermott Intern., Inc., 467 F.3d 514 (6th Cir. 2006) ("Establishing good cause is the

14

responsibility of the party opposing the motion to dismiss . . . and 'necessitates a demonstration of why service was not made within the time constraints.'"). Because the question of what constitutes "good cause" necessarily is determined on a case-by-case basis within the discretion of the district court, courts have declined to give it a concrete definition, preferring to analyze a number of factors. These include whether: 1) the delay in service was outside the plaintiff's control, 2) the defendant was evasive, 3) the plaintiff acted diligently or made reasonable efforts, 4) the plaintiff is pro se or in forma pauperis, 5) the defendant will be prejudiced, or 6) the plaintiff asked for an extension of time under Rule 6(b)(1)(A). See Kurka v. Iowa Cty., Iowa, 628 F.3d 953, 957 (8th Cir. 2010); Dickerson, 604 F.3d at 752. In addition, the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." McNeil v. United States, 508 U.S. 106, 113 (1993).

Under the facts in this case, we agree with the district court that Scott did not demonstrate good cause for his repeated failure to effect proper service. Even acknowledging that Scott's pro se status may have contributed to the shortcomings in service of process, his status is not the only relevant factor a district court should consider. Although Scott

15

admittedly made multiple attempts at service, those efforts lacked diligence and reasonableness.

Scott relies heavily on the fact that the Clerk sent him only one copy of the USMS form. However, he has never explained why he failed to inquire about additional forms at the Clerk's office and waited to return the one form for DLLR until the final day on which he had been directed to do so. Moreover, the Clerk's error was not so onerous as to prevent him from taking simple steps, such as making copies of the USMS form, to cure the problem. We find it even more confounding that the forms he claims he retrieved in person in mid-December 2014 were not submitted to the Clerk for nearly two months.

Setting aside issues of timeliness, service of process on DLLR was insufficient on both occasions for the sole reason that Scott refused to follow the district court's specific instructions about how to find the proper service address for DLLR. In the second instance, he could simply have copied it directly from the defendants' motion to dismiss into the "Serve At" line of the USMS form. The only justification Scott has provided for his repeated failure is that he "is not a savvy internet user and did not understand the relevance of the reference to the resident agent." Such a subjective misunderstanding of procedural requirements cannot excuse Scott's noncompliance. See McNeil, 508 U.S. at 113 ("[R]ules of

16

procedure are based on the assumption that litigation is normally conducted by lawyers.").

Even Scott's attorney, after noting her appearance, did not file a motion pursuant to Fed. R. Civ. P. 6(b) seeking to extend the time in which to serve. Instead, she added a brief, one-sentence request for an extension in her response to the defendants' motion to dismiss, which was not filed until nearly one month after she noted her appearance. We note that she also included a one-paragraph request for leave to amend the complaint if the complaint was found "deficient and subject to dismissal." J.A. 186. Despite the elapse of one month between her appearance and the filing of any response, Scott's attorney failed to comply with the District of Maryland's local rule requiring that she both attempt to obtain consent of opposing counsel and attach the proposed amended complaint.[3] In consideration of all these facts, we conclude that the district court did not abuse its discretion by dismissing the complaint for insufficient service of process.[4]

---

[3] District of Maryland Local Rule 103.6(a).

[4] Scott's attorney urges us to view the defendants' motion to dismiss as a motion to quash. See <u>Vorhees v. Fischer & Krecke</u>, 697 F.2d 574, 576 (4th Cir. 1983) ("[T]he statute of limitations had run on the plaintiffs' various causes of action . . . the action should not have been dismissed until the plaintiffs were given a reasonable opportunity to attempt to effect valid service of process on the defendant."). We are
(Continued)

17

C.

We turn next to the question of whether the district court properly dismissed the claims against the individual defendants. As discussed earlier, based on Scott's in forma pauperis status, his March 2015 attempts to serve the individual defendants were timely. Nevertheless, regardless of whether the individual defendants were properly served, the district court correctly concluded that the violations of Title VII and the ADEA alleged in the complaint failed to state a claim for relief against them.

In Birkbeck v. Marvel Lighting Corp., we held that "the ADEA limits civil liability to the employer," and that Congress did not intend to impose personal liability on an employer's agents. 30 F.3d 507, 510-11 (4th Cir. 1994). Likewise, in Lissau v. Southern Food Services, Inc., interpreting similar language in Title VII, we held that individuals are not subject to liability under that statute. 159 F.3d 177, 180-81 (4th Cir. 1998). Therefore, we agree with the district court that, whether

under no obligation to do so. Scott had a reasonable opportunity to effect valid service, and he failed to do so on multiple occasions. Moreover, the district court dismissed the case more than two months after the service period had expired; at no time did it cut short Scott's chance at proper service.

18

they were properly served or not, the individual defendants are not appropriate parties to this lawsuit.

## IV.

For the reasons discussed, the judgment of the district court is

AFFIRMED.